Case 5:25-cv-00252   Document 22   Filed 01/30/26 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
January 30, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **MARVIN DERAS GALDAMEZ,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:25-CV-252 |
| | § | |
| **KRISTI NOEM, ET AL.,** | § | |
| | § | |
| Respondents. | § | |

### MEMORANDUM OPINION AND ORDER

Petitioner Marvin Deras Galdamez is currently in federal custody at the Rio Grande Processing Center in Laredo, Texas. (Dkt. No. 1 at 3).[1] Before the Court is Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (Dkt. No. 1), and Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, (Dkt. No. 11).[2] Petitioner is an undocumented immigrant with a reinstated order of removal. The question before the Court is whether Petitioner's due process rights were violated by Respondents' failure to provide notice and an informal interview before his release and order of supervision were revoked.

The Court finds that Petitioner was entitled to those due process procedures according to regulation, and the failure to provide due process warrants release of Petitioner. For the reasons stated below, Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to release Petitioner **within 24 hours of the entry of this Order**. The parties are **ORDERED** to notify the Court of the status

---

[1] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

[2] Respondents' motion is filed only on behalf of the Federal Respondents (Noem and Vergara) as the real parties in interest in this case as they "have detention authority over aliens detained under Title 8 of the United States Code." (Dkt. No. 11 at 1 n.1). Respondents do not respond on behalf of the Respondent Warden. The Court will refer to the Federal Respondents as Respondents.

of Petitioner's release by **February 2, 2026, at 5:00 p.m.**

## I. BACKGROUND

### A. Petitioner's Immigration History

Petitioner, a citizen of El Salvador, challenges his ongoing detention following the revocation of his Order of Supervision (OSUP). According to documents submitted by Respondents, Petitioner first entered the United States in April 2004. (Dkt. No. 11-1 at 2). By May 2004, Petitioner was ordered removed by an Immigration Judge (IJ) in his removal proceedings. (Dkt. No. 11-3). Following his order of removal, Petitioner was removed to El Salvador on July 26, 2004. (Dkt. No. 11-1 at 3).

Petitioner later re-entered the United States without inspection in 2007. (Dkt. No. 1 at 4; Dkt. No. 21 at 1). He did not encounter immigration authorities until October 15, 2012, when deportation officers approached Petitioner at his residence. (Dkt. No. 11-1 at 2). After interviewing Petitioner, a deportation officer took him into U.S. Immigration and Customs Enforcement (ICE) custody. (Dkt. No. 11-1 at 2).

### B. Petitioner's Reinstatement of Removal

Upon being taken into custody on October 15, 2012, Petitioner was served a Notice of Intent/Decision to Reinstate Prior Order. (Dkt. No. 11-4 at 1). This notice acknowledges that, "[i]n accordance with Section 241(a)(5) of the [Immigration and Nationality] Act, [Petitioner is] removable as an alien who has illegally reentered the United States after having been previously removed or deported voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order." (*Id.*). It also states that Petitioner did not have the right to appear before an IJ. (*Id.*). Petitioner did not contest this determination. (*Id.*).

### C. Petitioner's Order of Supervision

Instead of being removed following the reinstatement of his removal in 2012, Petitioner was released from detention on an OSUP on January 7, 2013. (Dkt. No. 20-1 at 2). This order notified Petitioner that he had been arrested and placed in removal proceedings, however, Petitioner had already been ordered removed. (*Id.*). It continued that: "In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions." (*Id.*). This

OSUP required Petitioner to comply with various conditions, including a reporting requirement for him to periodically report to ICE offices. (*Id.* at 2–3). Petitioner has complied with these requirements. (*Id.* at 5; *see also* Dkt. No. 20 at 1–2 n.1).

### D. Petitioner's Withholding Only Proceedings

Ten years after Petitioner's removal order had been reinstated and he had been released on an OSUP, he was placed in Withholding Only Proceedings in immigration court. (Dkt. No. 11-5 at 1). These proceedings were to determine whether Petitioner's removal to El Salvador should be withheld or deferred under INA Section 241(b)(3) or the Convention Against Torture. (*See id.*). The IJ ultimately denied Petitioner's applications for withholding or deferral of removal, finding that Petitioner could be removed to El Salvador. (*Id.*; *see also* Dkt. No. 21 at 25). Petitioner appealed the IJ's decision to the Board of Immigration Appeals (BIA). (Dkt. No. 21-1 at 3). The BIA ultimately dismissed Petitioner's appeal on January 6, 2026.

### E. Petitioner's Re-Detention and OSUP Revocation

On August 12, 2025, Petitioner reported to an ICE office as instructed under his OSUP. (Dkt. No. 1 at 5). That day, Petitioner alleges, he was detained by ICE without notice or information about the revocation of his OSUP, which was effectively terminated upon his re-detention. (*Id.* at 10). He was also not provided an opportunity to contest his revocation. (*Id.*).

On December 4, 2025, Petitioner filed the instant petition for a writ of habeas corpus, asserting that his OSUP was improperly revoked in violation of federal regulations and procedural and substantive due process. (Dkt. No. 1). He requests, among other things, that the Court issue an order requiring Respondents to release him from immigration custody.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation modified). When reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a district court may dismiss the action based upon: (1) the complaint alone; (2) the complaint supplemented by undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Williams v. Wynne,* 533 F.3d 360, 365 n.2 (5th Cir. 2008). The party who invokes federal court jurisdiction bears the burden of showing that jurisdiction is proper. *Hartford Ins. Group v. Lou–Con Inc.,* 293 F.3d 908, 910 (5th Cir. 2002).

### B. Rule 12(b)(6)

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (citation modified). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This does not require detailed factual allegations but does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "accept as true all well-pleaded facts." *Rosenblatt v. United Way of Greater Hou.*, 607 F.3d 413, 417 (5th Cir. 2010). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### C. 28 U.S.C. Section 2241

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003); *Oyelude v. Chertoff*, 125 F. App'x

543, 546 (5th Cir. 2005).

## III. DISCUSSION

Respondents move to dismiss the petition, asserting that Petitioner's detention is lawful and that the revocation of supervised release is a non-reviewable discretionary decision. Before addressing the lawfulness of Petitioner's detention, the Court evaluates its jurisdiction to hear Petitioner's claims.

### A. The Court Has Jurisdiction

Respondents challenge the Court's jurisdiction to review the discretionary decision to revoke Petitioner's OSUP. (Dkt. No. 11 at 7). Petitioner replies that the Court does have jurisdiction to consider his claims because the jurisdictional statute does not bar review. (Dkt. No. 12 at 3–4).

Under 8 U.S.C. § 1252(a)(2)(B)(ii), federal courts have no jurisdiction to review a "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." This statute would bar review of the agency's decision to revoke Petitioner's OSUP. 8 C.F.R. § 241.4 (authorizing revocation of supervised release "in the exercise of discretion"). The Court agrees with Respondents that it could not review the discretionary decision to revoke Petitioner's OSUP.

However, Petitioner does not challenge any decision made by the agency to revoke his OSUP. Instead, he challenges the process, or lack thereof, that he received in accordance with that revocation. The Court has jurisdiction to review Petitioner's claims that Respondents violated his statutory and constitutional rights to due process in the course of re-detaining him. *See Demore*, 538 U.S. at 516–17 (citing 28 U.S.C. § 2241(c)(3)); *Baez v. Bureau of Immigr. & Customs Enf't*, 150 F. App'x 311, 312 (5th Cir. 2005) (per curiam) (courts retain the power to hear statutory and constitutional challenges to immigration detention when those claims do not challenge the final order of removal); *see also Villanueva v. Tate*, 801 F. Supp. 3d 689, 698 (S.D. Tex. 2025).

As held by other district courts, "[n]othing in 8 U.S.C. § 1252(a)(2)(B)(ii) prevents the Court from considering [Petitioner's] challenge to the manner in which the government revoked his Order of Supervision or considering whether the government

followed its own regulations in doing so." *Villanueva*, 801 F. Supp. 3d at 698 (citing *Zadvydas*, 533 U.S. at 687–88; *Oyelude*, 125 F. App'x at 546; *Mantena v. Johnson*, 809 F.3d 721, 728–29 (2d Cir. 2015)); *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 153 (W.D.N.Y. May 2, 2025).

Because Petitioner does not challenge his removal order, reinstatement of removal, denial of withholding of removal or deferral of removal, or any other decision made to remove him, the Court is not stripped of jurisdiction by 8 U.S.C. § 1252(a)(2)(B). To the extent Respondents move to dismiss the petition for a lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the motion is **DENIED**.

### B. Federal Regulations Govern Petitioner's Revocation

The Court next turns to identifying the statutory and regulatory authority that controls Petitioner's detention, release, and revocation of release. 8 U.S.C. § 1231 sets out procedures for the detention and removal of noncitizens subject to an order of removal. Petitioner was ordered removed in 2004, and that order of removal was reinstated in 2012. His detention at that time should have been governed by 8 U.S.C. § 1231 and corresponding regulations. However, the OSUP releasing Petitioner from custody appears to have been issued under an inapplicable statutory authority. (*See* Dkt. No. 20 at 1–2).

Because Petitioner had already been ordered removed as his removal order was reinstated, INA Section 236 (8 U.S.C. § 1226) was not the appropriate authority applicable to Petitioner's release in 2013. Section 1226 provides the general process for arresting and detaining noncitizens who are present in the United States and eligible for removal pending removal proceedings. 8 U.S.C. § 1226. The Supreme Court has explained that Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)).

Petitioner should have been released under a different statutory authority, INA Section 241 (8 U.S.C. § 1231). Based on this discrepancy, the Court applies the statutes and regulations relevant to noncitizens ordered removed. 8 U.S.C. § 1231; 8 C.F.R. Part 241 ("Apprehension and Detention of Aliens Ordered Removed"). These regulations

provide that the "[e]xecution of the reinstated order of removal and detention of the alien shall be administered in accordance with this part." 8 C.F.R. § 241.8(f). For this reason, the Court finds that this Part of the regulations applied to Petitioner at the time he was detained and his OSUP was revoked.

Generally, once a noncitizen subject to a removal order has been released from detention on an OSUP, Part 241 provides for when and how that OSUP may be revoked. *See* 8 C.F.R. § 241.4(l). For example, an OSUP may be revoked if the noncitizen violates any of its conditions. *See* 8 C.F.R. § 241.4(l)(1); § 241.4(l)(2)(ii). An OSUP also may be revoked if it becomes appropriate to enforce a removal order or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2)(iii), § 241.4(l)(2)(iv). The regulations are clear that the agency has broad discretion to revoke release. *See* 8 C.F.R. § 241.4(l)(2) ("Determination by the [agency]. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [Department of Homeland Security] custody an alien previously approved for release under the procedures in this section.").

However, these revocation regulations further state that: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole." 8 C.F.R. § 241.4(l)(1). Additionally, the regulations provide: "The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* Because of the circumstances surrounding Petitioner's detention, release, and revocation, the Court finds that these procedures governed the revocation of his release and his detention.[3]

### C. Respondents Did Not Comply with Proper Revocation Procedures

Petitioner challenges his detention as unlawful under four grounds: (1) violation of 8 C.F.R. § 241.13(i)(2)–(3); (2) violation of 8 C.F.R. § 241.4(l)(1)–(3); (3) violation of procedural due process; and (4) violation of substantive due process. Respondents move to dismiss on the basis that Petitioner's detention is lawful. (Dkt. No. 11). They focus

---

[3] Respondents do not, at any point, argue that Petitioner was not entitled to these procedures, that they did not apply to him, or that revocation of his release would follow any other regulatory procedures instead.

broadly on the authority to detain noncitizens subject to orders of removal and the limit on indefinite detention set forth in *Zadvydas*. 533 U.S. 678.

Importantly, Petitioner is not challenging his detention as prolonged or indefinite under *Zadvydas*. Instead, Petitioner asserts that the failure to follow revocation procedures was a violation of regulations and due process. Petitioner specifically identifies Respondents' failure to provide him notice with reasons for revocation of his OSUP and an informal interview to contest the revocation. (Dkt. No. 1 at 10).

Essentially, Petitioner contends that the government violated his due process rights by revoking his OSUP without complying with the applicable regulations. As explained above, Petitioner's OSUP revocation was subject to the provisions of 8 C.F.R. § 241.4(l), which provide for notice of the reasons of revocation and an informal interview. 8 C.F.R. § 241.4(l)(1). Respondents do not dispute, and the Court so finds, that Petitioner did not receive notice of the revocation prior to his re-detention in 2025, nor did he receive an informal interview following his revocation. (Dkt. No. 1 at 10).[4] Because Petitioner did not receive the proper procedures before the revocation of his OSUP, the Court finds that Respondents failed to follow the regulations before revoking his OSUP, which was a violation of Petitioner's rights to procedural due process under the regulations.

### D. This Violation Warrants Release from Unlawful Detention

A violation of the regulations alone does not necessarily warrant the relief Petitioner seeks unless there is a showing of prejudice. For example, in other administrative contexts, claimants must show the resulting prejudice of a regulatory violation. *See, e.g.*, *Shave v. Apfel*, 238 F.3d 592, 596–97 (5th Cir. 2001). In other Section 2241 contexts, relief is not available for the failure to comply with the regulations unless the petitioner was prejudiced. *McKoy v. Fox*, 587 F. App'x. 802, 805 (5th Cir. 2014).

The Court finds that Petitioner was substantially prejudiced by the government's failure to comply with revocation regulations. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."

---

[4] In an order for supplemental briefing, the Court ordered Respondents to "provide details regarding Petitioner's Order of Supervision, including the date it was issued, the statutory or regulatory authority it was authorized under, and notice, if any, provided to Petitioner of revocation of release." (Dkt. No. 18 at 1). While Respondents did provide information about Petitioner's release on the OSUP, Respondents did not provide information about the statutory authority or evidence of notice provided to Petitioner about the revocation of his OSUP. (Dkt. No. 21).

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Petitioner, who had been released on an OSUP for over twelve years at the time he was re-detained on August 12, 2025, was entitled to due process procedures before that release could be revoked according to regulation. The failure by Respondents to provide that process deprived Petitioner of notice and an opportunity to respond to his revocation at an informal interview, which resulted in his continued detention for over five months.

In order to determine the extent of the procedural due process violation, the Court considers the three factors set out by the Supreme Court in *Mathews v. Eldridge*: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 334–35.

First, Petitioner has constitutionally protected liberty interests at stake. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Though the Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens," *Demore*, 538 U.S. at 522, the regulations and process required here were created specifically to protect the rights of noncitizens like Petitioner. Petitioner has a liberty interest in his continued release under his OSUP. He had been free from detention for twelve years prior to his re-detention and was only required to comply with his conditions of release. Petitioner lived in North Chesterfield, Virginia with his wife and three children. To the Court's knowledge, he has complied with all the conditions of his release. There is no indication that Petitioner does not have a strong liberty interest in his release. This factor weighs heavily in favor of Petitioner.

Second, the Court evaluates the risk of an erroneous deprivation of liberty without the proper revocation procedures. The relevant federal regulations are intended to ensure that noncitizens on orders of supervision receive fundamental due process protections: notice and an opportunity to be heard. Without the provision of these procedural

safeguards, including notice of the government's intent to revoke his OSUP, notice of the reasons for the revocation, and an opportunity to receive an informal interview, Petitioner faced an erroneous deprivation of liberty in being detained without following the required process. This factor weighs in favor of Petitioner.

Third, the burden imposed on the government does not outweigh Petitioner's interests described above. The government has a weighty interest in removing deportable noncitizens, using discretion to release noncitizens on orders of supervision, and ensuring compliance with immigration laws. However, those interests are not at odds with requiring compliance with its own regulations. Specifically, the agency promulgated regulations and minimal procedures it would follow to revoke an OSUP but failed to comply with those procedures when it re-detained Petitioner. There is no legitimate interest in failing to comply with regulations, which ensure that due process rights are protected in the execution of federal laws. While the government has an interest in effectuating removals efficiently, Petitioner's due process interests prior to a deprivation of liberty are stronger.

In considering the balance of the factors, the Court finds that the failure to comply with regulations, which ultimately denied Petitioner notice of his revocation and an informal interview, constitute a due process violation under these facts and warrant relief. A district court has equitable discretion in determining the appropriate remedy "as law and justice require" for unlawful detention in a habeas petition. *See Brown v. Davenport*, 596 U.S. 118, 127–28 (2022).

"Multiple courts have held that the government's failure to follow its own immigration regulations may warrant the release of a detained noncitizen." *Villanueva*, 801 F. Supp. 3d at 704 (citing *Bonitto v. Bureau of Immigr. & Customs Enf't*, 547 F. Supp. 2d 747, 756 (S.D. Tex. 2008); *Zhu v. Genalo*, No. 1:25-cv-06523, 2025 WL 2452352 (S.D.N.Y. Aug. 26, 2025); *Guillermo M.R. v. Kaiser*, No. 25-cv-05436, 791 F. Supp. 3d 1021 (N.D. Cal. July 17, 2025); *Ceesay*, 781 F. Supp. 3d at 165; *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017) ("While ICE does have significant discretion to detain, release, or revoke aliens, the agency must still follow its own regulations, procedures, and prior written commitments.")). Even when a petitioner could be immediately re-detained, courts have found that release still vindicates this type of procedural due

process violation. *See Ceesay*, 781 F. Supp. 3d at 156.

Based on the specific facts of this case, namely the length time Petitioner was released on the OSUP, the more than five months he has been detained in violation of the law, the weighty liberty interests at stake, and the clear deprivation of notice and an interview, the Court finds that the specific harm Petitioner suffered—revocation of release without due process—is remedied by granting his request for release and returning him to his status prior to the unlawful revocation, an order of supervision.

Though, the Court notes that Petitioner's likelihood of removability has changed since his petition was filed, which puts this case in a unique posture. When the BIA dismissed Petitioner's appeal, his likelihood of removal in the reasonably foreseeable future increased and has permitted Respondents to schedule Petitioner's removal for February 2, 2026. However, the Court does not find that this later-changed circumstance should change the relief Petitioner is entitled to because Petitioner's detention began in violation of his due process rights, which jeopardized his liberty at the time he was detained in August 2025.

Having considered Petitioner's petition, Respondents' motion, and the applicable law, the Court finds that the balance of the factors establishes that the government violated Petitioner's due process rights when it re-detained him without complying with its own regulations. The only way to protect Petitioner's due process rights at this stage is to order his release from custody and prevent his re-detention without compliance with the applicable revocation regulations. The Court therefore grants Petitioner's petition and orders his release subject to the conditions of his OSUP prior to its improper revocation.[5]

Finally, the Court acknowledges that Respondents are scheduled to remove Petitioner within the next few days. The Court is not reviewing—and cannot review— the decision to remove Petitioner. The Court's Order merely requires Respondents to release Petitioner because he is not presently detained in accordance with the law. Any re-detention of Petitioner to remove him should comply with federal regulations for

---

[5] The Court does not reach Petitioner's claims that the government violated regulations at 8 C.F.R. § 241.13(i) or violated Petitioner's substantive due process rights because the Court grants relief on Counts Two and Three.

revocation of release. Respondents are still within their rights, under the OSUP and federal regulations, to order Petitioner to surrender for removal or re-detain him after providing notice of revocation and an informal interview. (*See* Dkt. No. 20-1 at 2).

## IV. CONCLUSION

For the foregoing reasons, Respondents' Motion to Dismiss Petition for Writ of Habeas Corpus, (Dkt. No. 11), is **DENIED**. Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (Dkt. No. 1), is **GRANTED**.

The Court **ORDERS** Respondents to release Petitioner **within 24 hours of the entry of this Order**. Respondents must notify Petitioner's counsel of the exact time and location of release **no less than two hours** before his release. The parties are **ORDERED** to notify the Court of the status of Petitioner's release by **February 2, 2026, at 5:00 p.m.**

It is further **ORDERED** that Petitioner shall be released under the conditions of his OSUP that were in effect prior to its improper revocation, and any revocation of Petitioner's OSUP must be made pursuant to the relevant regulations and procedures governing revocation at 8 C.F.R. § 241.4(l)(1).

It is so **ORDERED**.

**SIGNED** on January 30, 2026.

_____
John A. Kazen
United States District Judge